# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LAMONTE A. EALY,**

        Plaintiff,

        -vs-                                **Case No. 14-CV-791**

**KEVIN NYKLEWICZ, et al.,**

        Defendants.

## DECISION AND ORDER

On July 8, 2014, Lamonte Ealy, a *pro se* plaintiff, filed a civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The Court screened the plaintiff's complaint pursuant to 28 U.S.C § 1915A(a) and allowed the plaintiff to proceed with his claim that the defendants failed to protect him in violation of the Fourteenth Amendment. (ECF No. 11.) This matter is before the Court on the defendants' motion for summary judgment (ECF No. 32), which was fully briefed as of July 1, 2015. For the reasons set forth below, the defendants' motion will be granted in part and denied in part.

## I. RELEVANT FACTS[1]

### A. The Parties

The plaintiff is a former Milwaukee County Jail (MCJ) inmate, who was a pretrial detainee on January 29, 2014, which is when the events alleged in the plaintiff's complaint occurred.

The defendants are the following MCJ former and current officials: Deputy Inspector Kevin Nyklewicz, who was second in command at MCJ at the relevant time; Lieutenant Erin Grove, who was working on the first shift at the relevant time; Corrections Officer Vincente Santana, who was working on the second shift at the relevant time; Corrections Officer Mariolys Flores, who was working on the second shift at the relevant time; and Lieutenant Steven Artus, who was working as the second shift housing lieutenant at the relevant time.

### B. The Events of January 29, 2014

On January 29, 2014, at approximately 1:23 p.m., the plaintiff notified non-party Corrections Officer Rochelle Einsiedel that there was theft, gambling, and gang activity in housing unit 5C. The plaintiff did

---

[1] The facts in this section are primarily taken from the Defendants' Proposed Findings of Fact (ECF No. 41), most of which are admitted for the purpose of deciding summary judgment because plaintiff failed to adequately respond to them. *See* Civil Local Rule 56(b)(4) (E.D. Wis.). Additional facts are taken from the plaintiff's sworn complaint (ECF No. 1), which the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). The Court indicates when a fact is in dispute.

not name the individuals involved, explain where or when the activities were taking place, or indicate that he felt unsafe or that he might be harmed as a result of these activities.

The plaintiff states that he also notified non-party Anthony Emanuele of the gang activity, although Emanuele denies that the plaintiff did so. Emanuele did not observe any theft, gambling, or gang activity that day, nor did the plaintiff report to Emanuele any concerns regarding his safety.

Einsiedel notified Grove of the plaintiff's vague statements about theft, gambling, and gang activity. The plaintiff did not notify Grove directly, and Grove did not observe anything that suggested to her that the plaintiff was at risk of any harm. Still, Grove determined that it was appropriate to move some inmates and monitor the housing unit culture based on the plaintiff's general statements. The defendants do not explain when Grove planned to move the inmates or how she determined which inmates to move.

The first shift ended, and Grove provided a briefing to the second shift staff. Second shift staff then briefed the second shift officers, including Santana and Flores, on the plaintiff's concerns and the

possibility of relocating some of the inmates, but no one indicated that the plaintiff was at risk of harm.

Later, the plaintiff told Flores that "something was going to happen" in the housing unit, but she did not interpret this statement to be an indication that he feared for his safety. (ECF No. 41 at ¶¶ 65-66.) The plaintiff did not specify what he believed was going to happen, who was going to be involved, why it was going to happen, or when it was going to happen.

Despite the vagueness of the plaintiff's statement, Flores phoned the housing unit and informed Santana of the comments. Flores also increased her monitoring of the housing unit by frequently panning the camera and making additional observations of the housing unit. Flores did not observe any activity to indicate that the plaintiff was at risk of harm.

According to the plaintiff, when he returned to the housing unit, Santana said, "watch yo back" because he had "heard the GD's talking to the higher rank about assaulting [the plaintiff]." (ECF No. 1 at 3, 4.) Santana says he only let the plaintiff know that actions were being taken in response to the plaintiff's earlier statements and that the plaintiff should let him know if he saw or heard anything else. (ECF No. 41 at ¶¶

75-77.) Santana then unlocked the plaintiff's cell for him, which had been locked at the plaintiff's request, but Santana did not lock the plaintiff in his cell because the plaintiff did not indicate that he wished Santana to do so. The plaintiff did not tell Santana that he felt unsafe, and nothing in the plaintiff's demeanor suggested to Santana that the plaintiff was fearful for his safety.

At about 5:30 p.m., Santana heard a loud noise, looked up toward the plaintiff's cell and observed the plaintiff with two other inmates who were striking the plaintiff with their fists. Santana notified the master control that inmates were fighting and ordered the inmates to stop fighting and lock in. The two inmates walked away.

Artus and other officers responded to Santana's call, and Artus did a follow-up interview with the three inmates. He then wrote the incident report.

The inmates were medically assessed and were cleared with no reported injuries. The plaintiff states he suffered a half inch cut on his left elbow, headaches, humiliation, and a loss of property. (ECF No. 1 at 3.)

## II.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011).  "Material facts" are those that "might affect the outcome of the suit."  *See Anderson*, 477 U.S. at 248.  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. ANALYSIS

The defendants argue they are entitled to summary judgment because: (1) Defendants Nyklewicz and Artus were not sufficiently personally involved; (2) the defendants were not deliberately indifferent to a risk of serious harm; (3) the plaintiff did not sustain a significant injury; and (4) the defendants are entitled to qualified immunity.

### A. Official Capacity

The distinction between official capacity and individual capacity is significant. "Personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law. . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S.159, 166 (1985)). In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. *Id*. On the other hand, an official-capacity suit is appropriate when a person is only executing or implementing the official policy or custom of a government entity. *Id*.

The plaintiff's allegations do not indicate or imply the existence of an official policy or custom. Simply concluding that a policy or custom exists is not sufficient. Such a legal conclusion must be supported by factual allegations that make the conclusion plausible. The plaintiff's complaint indicates only that each defendant acted on his/her own to deprive the plaintiff of his constitutional rights. Accordingly, plaintiff has not stated claims against any of the individual defendants in their official capacity, and those claims are dismissed.

## B. Personal Involvement

"Section 1983 makes public employees liable 'for their own misdeeds but not for anyone else's.'" *Burns v. Fenoglio*, 525 Fed.Appx. 512, 515 (7th Cir. 2013) (quoting *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)).

Defendants Nyklewicz and Artus argue they should be dismissed because they were not personally involved in this matter. The Court agrees. The plaintiff's complaint contains no allegations against either defendant, and the undisputed facts demonstrate that their involvement, if any, was limited to actions taken *after* the fight occurred. For example, Artus responded to Santana's call that inmates were fighting and he wrote the incident report after talking to the three inmates, but the plaintiff does not dispute (in an admissible form) Nyklewicz's and Artus's

- 8 -

statements that they were not aware of the threat to the plaintiff *before* the fight occurred. Because neither defendant was personally involved prior to the fight occurring, they will be dismissed.

## C. Deliberate Indifference to a Risk of Serious Harm

Although the Fourteenth Amendment is the appropriate basis for claims by pretrial detainees like the plaintiff, courts look to Eighth Amendment case law because the practical differences between the two standards are minimal and the Supreme Court has not yet decided that the Fourteenth Amendment provides pretrial detainees with additional protection. *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). "It is well-settled that both Amendments impose upon prison officials a duty to protect inmates from violent assaults at the hands of fellow prisoners." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

To establish a § 1983 failure to protect claim, the plaintiff must demonstrate that he was "incarcerated under conditions posing a 'substantial risk of serious harm.'" *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (internal citations omitted). Specifically, the plaintiff must show that each defendant had subjective knowledge of the risk of

harm and that each defendant disregarded that risk such that they demonstrated a "total unconcern for the prisoner's welfare" "by failing to take reasonable measures to abate" the risk. *Id.*; *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (internal citations omitted); *Farmer*, 511 U.S. at 847.

The Seventh Circuit has also clarified that an officer needs to have *specific* notice of a threat to an inmate; general statements of fear and concern or unsupported speculation are insufficient. *Klebanowski*, 540 F.3d at 638-39. Without the requisite level of specificity, there cannot be a finding of deliberate indifference. *Id.*

The undisputed facts show that the plaintiff did not provide Grove or Flores with enough information such that they were alerted to a specific threat of harm to the plaintiff. An officer told Grove that the plaintiff had indicated there was gambling, theft, and gang activity in the unit, and the plaintiff told Flores only that "something was going to happen." The Seventh Circuit has been clear that the lack of specificity in statements like these fall below the required notice that an officer must have for liability to attach for deliberate indifference. Grove and Flores will be dismissed.

However, according to the statements in the plaintiff's sworn complaint, Santana had much more specific information about the threat to the plaintiff. According to the plaintiff, Santana told him to watch his back because he had heard Gangster Disciples talking to the higher rank about assaulting the plaintiff. Thus, the plaintiff contends that Santana knew who in particular was planning to harm him and how they were planning to do it. This knowledge—regardless of the fact that Santana discovered it on his own and not from the plaintiff—would be sufficient to trigger Santana's responsibility to take reasonable measures to abate the risk. The plaintiff argues that Santana's act of warning the plaintiff of the risk was insufficient and that he should have done more to protect him.

Santana states that he did not overhear any such conversation and only instructed the plaintiff to let Santana know if he observed anything unusual. Santana contends that he knew only of the same general misconduct in the unit that Grove and Flores knew about.

The Court concludes that a question of fact exists about what knowledge Santana had and whether, in light of the knowledge he had, he took reasonable measures to abate the risk of harm to the plaintiff. Because the Court cannot resolve these questions at the summary

judgment stage, the defendants' summary judgment motion is denied with regard to the plaintiff's claim against Santana.

**D. The Plaintiff Sustained a Significant Injury**

The defendants argue that the plaintiff must demonstrate that he suffered "an objectively 'sufficiently serious' injury" in order to prevail on his claim. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006) (citations omitted). They argue that the plaintiff cannot make this showing because he was medically cleared immediately after the fight and states only that he suffered a half-inch cut on his elbow, headaches, and humiliation.

The defendants focus their analysis on the wrong injury. Here, the serious injury suffered by the plaintiff was the attack itself, not the physical consequences of the attack. The Supreme Court has made clear that, "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834. An official is not off the hook just because a plaintiff escapes physical injury if it is within the official's power to take reasonable steps to prevent a violent assault from occurring and they fail to do so.

Of course, "under the Prison Litigation Reform Act, without a physical injury, a court may not award compensatory damages for non-physical harm . . . ." *Turner v. Pollard*, 564 Fed.Appx. 234, 238 (7th Cir.

- 12 -

Case 2:14-cv-00791-DEJ   Filed 09/29/15   Page 12 of 14   Document 51

2014) (citing 42 U.S.C. § 1997e(e)) (other citations omitted).  Still, although compensatory damages may be unavailable, given the substantial danger to which the plaintiff was exposed, he may be eligible for nominal or punitive damages should he prevail.  *Id.* (citations omitted).

**E. Qualified Immunity**

"The affirmative defense of qualified immunity protects government officers from liability for actions taken in the course of their official duties if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To determine if qualified immunity applies, the courts employ a two-prong test: (1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)." *Hardaway*, 734 F.3d at 743.

"The purpose of the doctrine of qualified immunity is to shield public officers from liability 'consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to

- 13 -

Case 2:14-cv-00791-DEJ   Filed 09/29/15   Page 13 of 14   Document 51

assess the lawfulness of the act in question before he does it.'" *Walker v. Benjamin*, 293 F.3d 1030, 1040-41 (7th Cir. 2002) (quoting *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)). Because an officer's obligation to protect an inmate from an assault by other inmates when that officer knows of a specific threat against an inmate was well established at the time of these events, defendant Santana is not entitled to qualified immunity.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the "Defendants' Motion for Summary Judgment" (ECF No. 32) is **GRANTED** with respect to defendants Nyklewicz, Artus, Grove, and Flores, and **DENIED** with respect to defendant Santana.

**IT IS ALSO ORDERED THAT** the Court will attempt to find an attorney to represent the plaintiff *pro bono* on his surviving claim.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2015.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**